## Frennie May Coal Co. v. Snow.

March 24, 1950.

Rehearing denied May 9, 1950.

E. D. Stephenson, Judge.

Clyde R. Levi and Wm. B. Arthur for appellant.

G. R. Blackburn for appellee.

STANLEY, COMMISSIONER—Reversing.

On a petition for review by an injured employee, Charles Snow, the Circuit Court set aside a finding and award of the Workmen's Compensation Board that he had suffered temporary total disability from the date of his injury, December 29, 1947, to August 11, 1948, and partial permanent disability to the degree of 72 percent with maximum allowances at $400 for medical and surgical expenses. The Court was of the opinion that there was no material conflict in the competent and substantial evidence which proved the employee to be permanently and totally disabled and adjudged him entitled to the maximum compensation, which aggregates $9,000, payable according to the statute and subject to the sums already paid. The judgment further provides that if before the expiration of the compensable period the employee's condition should improve to such extent that he is able to work and earn money, then proper adjustment may be made under the terms of KRS 342.125. The employer, Frennie May Coal Co. appeals and contends that the finding of the Board should have been and should be affirmed.

The employee was injured by the delayed explosion of a mine cap. There is no conflict in the evidence concerning his total disability at the time the testimony was taken. He suffered the loss of his right eye and of hearing in one ear, some impairment to the hearing in the other ear and serious injury to his right arm. This resulted in impairment of the use of some, if not all, of his hand and fingers. The finding of temporary total disability is conceded. The only issue raised in the case was the permanency of total disability or its extent and duration. The question relates particularly to the future use of the man's right arm and hand which, of course, is coupled with the certain disability resulting from the loss of an eye and hearing in one ear.

Dr. Boland expressed the view that the man's dis-

ability as a whole was equal to 75 percent. Dr. Smith regarded his disability as total since his right arm was useless. Dr. Hodge regarded the man as 100 percent disabled by reason of the multiple injuries and losses, but estimated his arm to be disabled 85 percent although it was practically useless below the elbow.

On the other side of the case, Dr. Garr, an orthopedic surgeon of Lexington, who had treated Snow in March, 1948, and examined his arm again in August, 1948, found there had been a marked improvement in the use of the arm and hand. He testified: "I think he might regain probably ninety (90%) per cent to ninety-five (95%) per cent of the use of it. After the scar tissue was all removed it loosened up the tendons and instead of having just a flicker of movement, he was able to make fifty (50%) per cent of a fist when I saw him in August. I think eventually he will get his fingers into the palm of his hand. If he does, he will be able to handle tools or what-not that he would never have been able to handle had not this operation been done." Dr. Garr was of the opinion, however, that it would take another full year before it could be definitely determined that maximum improvement had been reached.

Dr. Dorton, a specialist in rehabilitation surgery who had attended the injured employee, stated that the nerves and tendons had been "strangled and enveloped" so that their functions were nil; but they had been loosened out of the dense bed of scar tissue to which they had adhered, and through these operations the wrist had been restored to 75 or 85 percent of normal function. Dr. Dorton expressed the opinion that maximum recovery had not been reached and that the man's condition would continue to improve for another year. Another operation to relieve a small remaining area of scar at the upper end of a skin graft, which was slightly attached to a tendon, should be made. This doctor thought the man could use his hand and do about 80 percent as much work with his arm as before it was injured.

The depositions of Dr. Garr and Dr. Dorton were taken in September, 1948. All of the testimony was taken within nine months of the man's injury. So, as we have indicated, the determination of the degree of permanent disability of the man as a whole was upon prognosis, that is, upon professional predictions based upon

diagnosis, or his present condition. Time alone could tell definitely.

The same speculative condition is presented in many tort actions and the best that can be done is to leave the matter to the judgment of a jury as to the damages that should be allowed for permanent impairment of earning power of an injured person. In Workmen's Compensation cases, as is well known, by virtue of the statutes, the finding of fact, present and foreseeable, must be given greater consideration by the courts than the verdict of a jury. We are frank to say that were we sitting as the initial authority, we would agree with the Circuit Judge that the finding should have been total permanent disability and that the burden should be upon the employer to show that the developments of time proved the prognosis to have been erroneous in some degree. But it was within the power and prerogative of the Workmen's Compensation Board to find otherwise. The Board did have the testimony of Dr. Garr and Dr. Dorton that great improvement in the condition of the man's arm and wrist had occurred during the course of nine months, and their professional opinions that the man would recover almost their complete use, thus leaving the disability resulting from the loss of the eye and hearing as nearly all of his physical impairment. The mathematical formula by which the Board arrived at the degree of 72 percent of total disability is not stated. Nor is the verdict of a jury in such a case. The Board is composed of men of training and experience in such matters and they doubtless arrived at the decision through bringing to bear their experience and observations in connection with the professional opinions of the doctors, even as does a jury. This they had the right to do. Of course, should time prove that prognosis to have been incorrect, the injured man may have his case reopened under the terms of the statute, KRS 342.125.

We are of the opinion, therefore, that the Circuit Court should have affirmed the finding of the Compensation Board. Accordingly, the judgment is reversed.