**BELKNAP HARDWARE & MANUFAC-
TURING COMPANY, Appellant,**

**v.**

**Raymond C. BROWN etc., Appellees.**

Court of Appeals of Kentucky.

May 13, 1966.

Wilton R. Long, Jr., Hamilton, Hopson & Hamilton, Louisville, for appellant.

John E. Wise, Louisville, Paul D. Rehm, Versailles, Robert Matthews, Atty. Gen., for appellees.

HILL, Judge.

Belknap appeals from a judgment of the Jefferson Circuit Court setting aside the final order of the Workmen's Compensa-

tion Board denying benefits to appellee Raymond C. Brown.

At the outset, it should be pointed out that the scope of review by the circuit court of an award of the Workmen's Compensation Board is limited by KRS 342.285(3), which provides:

"The court shall not substitute its judgment for that of the Board as to the weight of evidence on questions of fact, its review being limited to determining whether or not: * * * (d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record * * *."

By KRS 342.290, the scope of review in this court is thus limited:

"The scope of review by the Court of Appeals shall include all matters subject to review by the circuit court and also errors of law arising in the circuit court and upon appeal made reviewable by the Rules of Civil Procedure where not in conflict with this chapter."

■ This court has consistently respected the legislative limitations on the power of review of final orders of the Workmen's Compensation Board on disputed questions of fact. Cf. Frennie May Coal Co. v. Snow, 312 Ky. 580, 229 S.W.2d 56. It may be well to note here that KRS 342.285 was amended in 1964 as quoted above. Before the amendment, the power of review was limited by the Act of 1960 to determining whether "such findings of fact support the order, decision or award." We are not convinced that the 1964 amendment materially enlarged the scope of review authorized by the Act of 1960. In limiting review under the "clearly erroneous" test, the 1964 amendment simply states the award will not be disturbed by the courts if it is not clearly erroneous and is based on "reliable, probative and material evidence."

With the ground rules in mind, we turn to the evidence to determine whether the order of the board denying compensation to appellee was "clearly erroneous." Appellee contends he received a back injury August 27, 1962, in an attempt to prevent a hoist weighing 300 pounds from falling while repairing the roof of one of appellant's warehouses. Appellee stated four fellow-employees were present at the time of the injury, none of whom were called as witnesses for either party. This may be unimportant in the light of the Board's order finding that appellee "on said date * * * was involved in an accident."

The first physicians consulted by appellee were Drs. Davis and Southard a month after the injury. Neither doctor testified in this case. Eight months after the injury, he consulted Dr. Wedekemper, who did not testify. Appellee was transferred to another job after complaining, but it is doubtful the work was much lighter in the job to which he was transferred. In describing the work in the new department after transfer, he said: "Well, it varies, repairing warehouse trucks, sweeping the floor, changing oil in the cars or putting in spark plugs. Part of it is mechanical work and part of it is general labor."

Dr. Benjamin Jackson, a general surgeon who examined appellee in June 1963, testified appellee had "nothing objective to substantiate that he had a strain of the back."

Dr. H. Lester Reed, a neurosurgeon who treated appellee over a seven-month period commencing in June 1963, testified appellee has no permanent or "long range" occupational disability and as of January 24, 1964, had no "abnormalities" and was physically able to do heavy work.

Dr. W. McDaniel Ewing, an orthopedic surgeon, examined appellee in April 1964. He testified appellee could "probably do work as a carpenter or maintenance man" after six or eight weeks of additional therapy.

The only physicians who testified for appellee in chief were Dr. Earl Eversole, an

elderly abdominal surgeon, and Dr. George Nichols, a "family doctor" and general practitioner, both of whom saw appellee for the first time in December 1963 at the request of an attorney. Dr. Nichols testified appellee suffered a chronic low-back syndrome with a chronic lumbosacral and left sacroiliac strain, with a disability of 50 percent for light work and 100 percent for heavy work.

■ Dr. Gordon Smiley, called by appellee as a witness in rebuttal, described in detail the great pain suffered by appellee and concluded "all of these findings are consistent with irritation of lower lumbar nerve root which in the vast majority of cases would be caused by a lower lumbar disc protrusion." Appellant objected to the evidence of Dr. Smiley, but it is unnecessary to discuss this claimed error as we find there was abundant evidence to support the Board's order and that the order is not "clearly" or at all "erroneous."

■ It is insisted by appellee that the "board was bound to find a minimum of 15 percent permanent partial disability to the body as a whole," pursuant to the findings of the independent physician appointed under KRS 342.121. It is true Dr. Ludwig Segerberg was appointed pursuant to KRS 342.121, but we fail to find any support in this record for making the Subsequent Injury Fund a party in this proceeding. None of the conditions required by KRS 342.121 is present in the instant case. This being so, it well may be said the appointment of Dr. Segerberg was valid under KRS 342.-315, under which statute the Board has a wide discretion in accepting or rejecting the medical report. But it is unnecessary for us to treat the doctor's report as having been filed under KRS 342.315 inasmuch as 342.121 provides:

" * * * no such findings of the physician shall be subject to review *unless specific objections thereto shall be filed with the board by a party in interest within the time limited in which to apply for review of such report.*" (ten days) (Emphasis added.)

In the case at bar, appellee filed timely exceptions to the report of Dr. Segerberg, although appellant filed no exceptions thereto. The identical question with which we are concerned here was laid to rest in Kerns Bakery v. Hodges, Ky., 377 S.W.2d 88, 90, from which we quote:

"The statute unquestionably confers upon the Board-appointed physician the authority to initially decide any medical questions at issue. The fact that this function was previously performed by the Board is irrelevant because the Legislature may at any time change the procedure for administering the Compensation Act. General Refractories Co. v. Henderson, 313 Ky. 613, 232 S.W.2d 846. While the statute does permit the Board-appointed physician wide latitude in conducting his medical investigation this fact does not render the statute invalid. As we interpret this statute, if there are no exceptions timely filed to the Board-appointed physician's report it is presumed that the parties accept the report which thereupon becomes conclusive of the medical questions involved. If exceptions are timely made the Board may modify or set aside the report under which circumstance it becomes analogous to a recommendation of the Board's referee and is not controlling on the Board."

■ We conclude the report of Dr. Segerberg was advisory and the Board had a right to give it such weight as, in the exercise of a reasonable discretion, it saw fit.

The judgment is reversed with direction to enter another dismissing the petition for review and approving the order of the Workmen's Compensation Board.